IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHARON OSBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:12-cv-349-MHT |
| ) | |
| CHUCK HAGEL, Secretary, ) | |
| Department of Defense (Defense ) | |
| Information Systems) ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    BACKGROUND**

Before the court are Defendant's Motion to Dismiss and Extension of Time to Complete Discovery (Doc. 93) and Supplemental Motion to Dismiss (Doc. 97). For the reasons that follow, it is the RECOMMENDATION of the undersigned Magistrate Judge, that the Motion to Dismiss and Extension of Time to Complete Discovery (Doc. 93) and Supplemental Motion to Dismiss (Doc. 97) be DENIED.

**II.    DISCUSSION**

These Motions were filed related to ongoing discovery disputes. With these motions, Defendant is moving for the dismissal of this case, with prejudice, due to alleged discovery violations. The court notes that this is an extraordinary request. Indeed, "because dismissal is considered a drastic sanction, [and] a district court may only implement it, as a last resort." *World Thrust Films v. Int'l Family Entm't,* 41 F.3d 1454, 1456 (11th Cir. 1995). Defendant requests dismissal based on his assertion that

Plaintiff has willfully avoided sitting for depositions and for other various acts intended to obstruct the discovery process.  The court will discuss these allegations in turn.

### A. *Plaintiff's Deposition*

Defendant first moves for Dismissal or other sanctions, based on his allegation of Plaintiff's willful avoidance of her deposition.  Defendant asserts that Plaintiff willfully avoided a May 17, 2013 deposition date, claiming that she was still suffering from the effects of a concussion suffered on May 11, 2013, and instead had outpatient, elective surgery on her hand on May 17, 2013.  Plaintiff insists that she was suffering the effects of the concussion and was not able to sit for the depositions.

The court held a hearing on August 27, 2013, and informed the parties that it would not get into the specifics of whether Plaintiff actually suffered a concussion, and indeed, Defendant admitted that he had no way of knowing whether Plaintiff in fact suffered a concussion or not.  Instead, the court recognized what appeared to be a pattern of Plaintiff possibly avoiding the deposition and ordered that Plaintiff and her husband sit for depositions.  The court also instructed that it would withhold ruling on Plaintiff's request for dismissal or other sanctions until after the dispositions took place, to ensure that they took place and that all questions were answered without evasion.

The depositions took place on September 10 and 11, 2013.  While Defendant has raised new arguments for sanctions following the depositions, none of those arguments are based on Plaintiff or her husband's failure to sit for the depositions or failure to answer questions. As Defendant has now had a fair opportunity to depose Plaintiff and her husband, and "because dismissal is considered a drastic sanction, [and] a district court

2

may only implement it, as a last resort," the court finds dismissal based on this request inappropriate. *World Thrust Films,* 41 F.3d at 1456. Further, the court finds other sanctions to be unwarranted on this basis. Plaintiff has submitted medical records in support of her claim that she could not have earlier sat for depositions. The court is satisfied that the matter is now resolved.

### B. *Other Acts*

Defendant also moves for the dismissal of this action, or other sanctions, based on what he calls "Plaintiff's obstruction of Defendant's ability to build a reliable record." Def.'s Mot. (Doc. 93) at 11. In the Motion, Defendant asserts that (1) Plaintiff destroyed discoverable materials and Plaintiff's husband erroneously asserted Attorney-Client privilege during his first deposition to avoid answering questions about it; (2) Plaintiff's husband altered his testimony during his first deposition and erroneously asserted Attorney-Client privilege during the deposition to avoid answering question about it; and (3) a witness statement provided by Plaintiff had been altered. *See* Def.'s Br. (Doc. 93) at 11-17. Following the depositions, Defendant filed a Second Supplement Memorandum in Support of Motion to Dismiss and asserted that the depositions revealed additional support for the request for dismissal. Because Defendant's arguments are often intertwined, for the purposes of this discussion, the court has separated the arguments by those related to Plaintiff and those related to Plaintiff's husband, Michael Osburn.

### 1. *Plaintiff's Acts*

Defendant's first contention is related to Plaintiff's Facebook account.[1] In October of 2012, Defendant requested that Plaintiff produce:

> printouts of each private and public profile and "wall" from Facebook and any other online social networking sites to the Plaintiff belonged or maintain an account including: Linkedin, Myspace, Classmates.com and Mylife.com, as well as any statements / comments / status updates on those pages referencing, relating to, or evidencing Plaintiffs employment with Defendant during the during the entirety of her employment to the present, to her EEO complaints, to her rape allegations, or her mood/feelings/ emotional state/state of mind on any given day" and that she produce "a printout of the list of Plaintiffs Face book friends, and produce print outs of every message posted by Plaintiff to any of her friends on Face book (or any Face book message sent by Plaintiff through Facebook) about Tim Tarver, her employment at DISA, any sexual encounters, any alleged rapes, any pregnancies, any miscarriages, about her state of mind, or her allegations in this lawsuit.

Def.'s Sec. Supp. Br. (Doc. 111) at 4. Defendant asserts that he has repeated the requests for the Facebook information since that initial request. *Id*. at 5. Plaintiff provided her Facebook postings in September 2013, however, the documents provided contain no discussions of the incidents in the Complaint. *Id*. During her deposition, Plaintiff admitted that she had deleted information from her Facebook account. Defendant has obtained an affidavit from Plaintiff's former husband, wherein he "related that he and Plaintiff were Facebook friends and that she had informed him over Facebook that she had been raped by her former supervisor." *Id*. at 5-6. The contents of the conversation between Plaintiff and her former husband were provided to Defendant on June 21, 2012 by Plaintiff's former husband. Defendant asserts that the Facebook information turned

---

[1] The court takes notice that Facebook is an online "social media" website

4

over to Defendant in September of 2013 does not contain the conversation between Plaintiff and her former husband and that "[i]t is reasonable to conclude, based on Plaintiff's obstructionist behavior to date that other relevant conversations have been deleted as well." *Id*. at 6.

The court does not agree. Defendant is asking for severe sanctions, and in this instance, is doing so by asking the court to speculate that Plaintiff may have deleted other relevant Facebook information. The conversation in question is one in which Plaintiff is informing a former husband that she had been raped by a former supervisor. Defendant does not argue that the destruction of that conversation, or any like it, is necessarily damaging, just that the court can assume that other conversations might have been deleted. The court will not engage in such speculation. Plaintiff's admission of the deletion of other Facebook content is not damaging, where she simply admits that it is her normal practice to delete content from her social media account.

Defendant also argues for sanctions based on his allegation that "Plaintiff added two additional rape allegations that were not contained in either her April 16, 2012 complaint or July 9, 2012 amended complaint." *Id*. at 6. Defendant then details what he characterizes as Plaintiff's attempts to obstruct the discovery process by repeatedly objecting to specific requests for responses to interrogatories related to Plaintiff's allegations of sexual abuse. The court finds this basis for requests for sanctions to be without merit. This case has already proceeded through an administrative process and Defendant has been on notice of Plaintiff's claims. The point of the deposition, is to flesh out the claims. The fault of Plaintiff's late deposition does not entirely rest at Plaintiff's

5

doorstep. The Amended Complaint was filed in July of 2012, and Plaintiff was first noticed for depositions on May 17, 2013. Moreover, if Defendant believed that Plaintiff's objections to the interrogatories were improper, there was a mechanism in place to provide relief.

Finally, Defendant asserts that Plaintiff committed perjury when she testified that she had never seen "a copy of an August 15, 2011 notice of her proposed removal for prolonged absence with no foreseeable date of return. Plaintiff stated that she had never seen the proposal and that she did not know that she was being terminated until she received the October 7, 2011 notice of her termination." *Id*. at 10. However, "[o]n September 16, 2011, the Agency received Plaintiff's signed response to the August 15, 2011 termination proposal." *Id*. Defendant asserts this constitutes perjury and illustrates the bad faith in which Plaintiff has conducted discovery.

The court also finds this basis for sanctions to be without merit. First, the court notes that Defendant failed to confront Plaintiff with the letter, to either challenge her testimony or refresh her recollection. Certainly Defendant was not under any obligation to do so, but without more, the court is unable to determine that perjury has taken place versus Plaintiff simply forgetting that she had seen the letter. Second, as Defendant states, "when documentary evidence 'blatantly contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment." *Id*. at 11 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This then, is a matter for a later date and not a proper basis for discovery sanctions.

6

### *2.   Michael Osburn*

Defendant argues that Plaintiff improperly destroyed a private website and that during Michael Osburn's first deposition, Mr. Osburn improperly claimed attorney-client privilege.  Defendant raises this argument in his first Motion, but despite the title of the argument, Defendant does not specifically allege that Plaintiff destroyed the website.  The website in question was apparently taken down in 2009 or 2010.  At the July 9, 2013 deposition,  Michael Osburn stated that the site was taken down on the advice of counsel.  When questioned further about the advice, Plaintiff's counsel asserted attorney-client privilege and instructed Michael Osburn not to answer any further questions on the matter.  The court addressed this issue at the hearing, informing the parties that no attorney-client privilege had attached and instructed Plaintiff to make Michael Osburn available for a second deposition and to answer the questions.

At the September 11, 2013 deposition, Michael Osburn testified that he had taken the website down after Plaintiff informed her husband that Plaintiff's counsel had advised her to take it down.  *See* Second Mot. (Doc. 111) at 13.  Defendant asserts that Michael Osburn's testimony at the second deposition conflicts with his testimony at the first deposition.  The court has reviewed the deposition testimony and disagrees.  During the July deposition Michael Osburn said that "we were asked to take it down."  The September testimony clarifies the "we" and how "we" were asked.

Defendant has now been provided what purports to be the contents of the website.  However, Defendant argues that the production of the contents of the website shows that Michael Osburn lied in his first deposition when he testified that the website had not been

7

saved, that there is no way to verify that what has been provided is the actual content of the original website and that the content is complete, and that Plaintiff has disregarded the court and the discovery process. *See id.* at 14-16. With regard to Michael Osburn, the court does not find that Defendant has shown that he lied, or perjured himself. It is possible that he lied, or was simply confused regarding the technicalities of deleting content from the internet versus deleting content entirely. Further inquiry into the matter, likely including sworn testimony, would be required prior to a finding of purposeful misrepresentation. However, the court finds that unnecessary here, where Michael Osburn is not a party to this suit and Defendant has failed to link any possible wrongful act on his part to any misconduct by Plaintiff and where Defendant is now in possession of the content of the website. Defendant only offers mere speculation as to the completeness of the content provided, and the court finds that insufficient for sanctions. Moreover, Defendant cannot now show prejudice in any delay in handing over the contents of the website, as the deadlines in this case have been extended to accommodate discovery issues.

The same is true regarding Michael Osburn's testimony regarding how he learned his wife was pregnant. At his first deposition, Michael Osburn testified that his wife informed him of the pregnancy by telephone. After returning from a break in the depositions, Michael Owens stated that he had realized during the break that his memory and testimony was in error and that he wanted to correct the error. Mr. Osburn also stated that he had spoken to Plaintiff's attorney during the break. When questioned further as to the contents of that conversation, Plaintiff's attorney again asserted attorney-

client privilege. Defendant claims that the change in testimony during the break and the erroneous assertion of attorney-client privilege, and Michael Osburn's testimony that a "witness statement he provided to Plaintiff's counsel was altered before being given to Defendant," Def.'s Br. (Doc. 111) at 17, are evidence of a willful obstruction of the discovery process.

The court has already remedied the erroneous assertion of attorney-client privilege, by requiring Michael Osburn to sit for another deposition and instructing that the attorney-client privilege did not apply. Mr. Osburn explained that he spoke to Plaintiff's counsel regarding the process of correcting the testimony. Further, the court finds that the testimony surround the witness statement does not evidence any bad acts. Michael Osburn apparently submitted multiple statements over the course of the administrative proceedings, Plaintiff now asserts that the alteration he described was related to a statement he gave during the EEO proceedings, which was different than the one given during the Department of Labor review process because the focuses of the proceedings are not the same. *See* Pl.'s Resp. (Doc. 117) at 36-37. In other words, one statement included more detail than the other. Defendant fails to point this court to any prejudice he might have suffered as a result of this testimony, or its relevance to his defense. Instead, Defendant invites the court to use Michael Osburn's testimony regarding an "altered" witness statement, along with the "inexplicable change" in his testimony regarding how he found out his wife was pregnant, and the erroneous instruction of attorney-client privilege to impose the strictest of sanctions upon Plaintiff. The court finds no merit in that request.

9

### B.     *Extension of Time*

Defendant has also requested that the court extend the time in which to conduct discovery, due the problems stated above.  This issue has been rendered moot by the courts rulings, including the undersigned's requirement that Plaintiff and Michael Osburn sit for depositions after the discovery deadline, as well as the district judge's orders extending discovery, *see* e.g. Order (Doc. 92), and suspension of the pretrial and trial dates, *see* Order (Doc. 87).

## III. CONCLUSION

The court has carefully considered the arguments made by Defendant and while the court finds that sanctions are not warranted, the court is not unsympathetic to Defendants clear frustration with the manner in which discovery was conducted.  While some of the issues raised by Defendant do not amount to discovery violations, some of the issues raised caused the court concern.  This is why the court ordered Plaintiff to sit for depositions on a date certain and why the court has extended and stayed deadlines.  Ultimately, the court has determined that its remedies to any deficiencies are more appropriate for the administration of this case.

Accordingly, for the reasons stated above, it is the RECOMMENDATION of the undersigned Magistrate Judge, that the Motion to Dismiss and Extension of Time to Complete Discovery (Doc. 93) and Supplemental Motion to Dismiss (Doc. 97) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before November 27, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 13th day of November, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE